```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAREN R. ROTOLO,              )
                              )
          Plaintiff,          )   Civil Action No. 05-846
                              )
     v.                       )   Judge McVerry
                              )   Magistrate Judge Caiazza
MONONGAHELA VALLEY HOSPITAL,  )
                              )
          Defendant.          )
```

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the Defendant's Motion for Summary Judgment (Doc. 13) be granted.

**II.  REPORT**

**BACKGROUND**

The Plaintiff Karen R. Rotolo has brought this disability discrimination lawsuit against her former employer, the Monongahela Valley Hospital (at times, "the Hospital"). *See generally* Compl. (Doc. 1). Ms. Rotolo worked as a dialysis nurse, a position requiring her to "mov[e] patients to and from the dialysis area, lift[] patients, and mov[e] equipment." *See* Def.'s Statement of Facts (Doc. 16) at ¶ 5.[1]

In October 2002, Ms. Rotolo was injured in an automobile accident. *See* Def.'s Facts at ¶ 6. Her best efforts

---

[1] The undesigned relies on the Defendant's statements of fact only to the extent they are uncontested. *Compare, e.g., id. with* Pl.'s Resp. to Def.'s Statement of Facts (Doc. 21) at ¶ 5 (Defendant's assertions in ¶ 5 are "[u]ncontested").

notwithstanding, the Plaintiff no longer could perform her former position. *See, e.g., id.* at ¶¶ 11-12 (noting instance where Plaintiff was unable to provide patient necessary medical care) *and id.* at ¶ 13 (Plaintiff no longer was "physically able to perform dialysis work").

Thereafter, when physically less demanding nursing positions became available, Ms. Rotolo's coworkers advised her of them. *See id.* at ¶ 15. In June 2003, an "employee health nurse" position was posted, and the Plaintiff applied. *Id.* at ¶¶ 22-23. She interviewed for the job, but another candidate was selected. *See id.* at ¶¶ 24, 31.

A "utilization review nurse" position was posted in July 2003, and the Plaintiff interviewed for that position as well. *Id.* at ¶¶ 36-37, 39. The Hospital found another candidate more qualified, and Ms. Rotolo was not chosen. *See id.* at ¶¶ 43, 45.

Finally, "a temporary pre-anesthesia [nursing] position" was posted in March 2004. *Id.* at ¶ 48. When the Plaintiff called to inquire, the Hospital's vice president of nursing advised her the position involved more than "sedentary [to] light duty" work. *Id.* at ¶ 49.[2] Ms. Rotolo nevertheless claims to have sent a letter expressing interest in the position, but the Defendant denies having received it. *See id.* at ¶¶ 51-52, 54.

---

[2] Although there has been some dispute regarding the Plaintiff's functional capacity, she at most was capable of light duty work. *See, e.g., id.* at ¶¶ 58-62 (noting doctor's letter indicating same).

In any event, Ms. Rotolo was not interviewed and another candidate was selected. *Id.* at ¶¶ 57, 78.

The Plaintiff ceased communications with the Hospital in April 2004, and she filed her discrimination charge in June of the same year. *See id.* at ¶¶ 83-84.

**ANALYSIS**

The Defendant argues Ms. Rotolo is not actually disabled, and the Plaintiff concedes the point. *Compare* Def.'s Br. (Doc. 14) at 10-12 (arguing no actual disability under ADA or PHRA) *with generally* Pl.'s Opp'n Br. (Doc. 17) (failing to dispute same). Rather, the Plaintiff asserts she was "regarded as" disabled under the relevant statutes. *See* Pl.'s Opp'n Br. at 5. Counsel further clarifies that Ms. Rotolo proceeds under a "failure to accommodate" theory, alleging the Hospital should have transferred her into an existing, less rigorous position. *See id.* at 2, 4-5.[3] Unfortunately for the Plaintiff, she can satisfy neither the "regarded as" nor accommodation standards.

---

[3] *See also generally* Armstrong v. Burdette Tomlin Memorial Hosp., 438 F.3d 240, 246 (3d Cir. 2006) (failure to accommodate theory requires that defendant knew of or perceived disability, plaintiff requested accommodation, employer did not make good faith effort to accommodate, and plaintiff could have been reasonably accommodated) (citations omitted); Shapiro v. Township of Lakewood, 292 F.3d 356, 360 (3d Cir. 2002) (in failure-to-transfer case, plaintiff must show she could perform "a vacant, funded position . . . at or below the level of [her] former job") (citation and internal quotations omitted).

Under the "regarded as" theory, the employer must "regard the employee [as] suffering from an impairment within the meaning of the [disability discrimination] statutes." Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 381 (3d Cir. 2002) (citation, internal quotations and alterations omitted). This includes conditions that "significantly limit[] one or more major life activit[ies]." Marinelli v. City of Erie, Pa., 216 F.3d 354, 361 (3d Cir. 2000) (internal quotations omitted). Here, counsel appears to identify standing, walking, and/or working as the relevant life activities. *See* Pl.'s Opp'n Br. at 6-7.

As Ms. Rotolo must concede, she was limited in her ability to stand, walk, and work. *See id.* at 7 ("Dr. Gandhi testified that [she] was in fact limited in her ability to stand and walk for a period of time"); *see also* discussion *supra* (noting clear evidence Plaintiff no longer could perform dialysis position). The Plaintiff maintains, though, that she eventually recovered to the point of being able to perform light work. *See id.; see also* discussion *supra*.

The problem for the Plaintiff is her inability to show the Hospital regarded her as being more limited than she was. Indeed, the Defendant actually interviewed Ms. Rotolo for two of the three jobs she has identified as being within her capacity. *See* discussions *supra*. The Plaintiff was not chosen for the positions, and there is no reason to infer that the employment

decisions were made based on misperception(s) of disability. *See id.; see also* Pl.'s Resp. to Def.'s Facts at ¶ 43 (Plaintiff leaves "[u]ncontested" Defendant's evidence that another candidate was "[better] qualified" for utilization review position).

The third replacement job, the temporary pre-anesthesia position, yields no better result. The Plaintiff's only "regarded as" evidence relates to the vice president of nursing's statement that the position required more than "sedentary [to] light duty" work. *See* discussion *supra*. At best, this evidence infers that the Hospital perceived Ms. Rotolo as being incapable of work beyond the light exertional level, a fact confirmed by her own physician. *See* Pl.'s Opp'n Br. at 9 (citing Dr. Gandhi's findings).

Even more importantly, the Court of Appeals for the Third Circuit has held that physician opinions regarding exertional limitation do not, in themselves, establish disability under the ADA:

> [The plaintiff] argues that the restrictions placed upon his work by [his physician] . . . limits his ability to perform 'all super heavy and heavy jobs and all medium, light and sedentary positions requiring bilateral grip or repetitive use of the left extremity.' . . . This assertion, however, only lists the restrictions that a physician has placed on [his] work[.]

>It does not indicate . . . [a] class of jobs . . . from which he is disqualified[4] . . . . [G]eneral averments [of exertional limitation are] insufficient to establish disability . . . under the ADA.  [Courts have] held[, for example,] that <u>testimony suggesting that a plaintiff [can] only perform light or sedentary work merely establishe[s] that the individual [is] disqualified from a narrow range of jobs</u>, <u>and therefore [is] insufficient to establish that the plaintiff [is] disabled within the meaning of the ADA</u>. . . . As a result, [the plaintiff] cannot avoid judgment as a matter of law simply by pointing to the restrictions that [his physician has] placed upon his work.

*Id.*, 216 F.3d at 364-65 (numerous citations omitted, emphasis added).  Ms. Rotolo's theories are materially indistinguishable from those rejected in <u>Marinelli</u>,[5] and the Defendant is entitled to summary judgment.

In light of the Plaintiff's failure to satisfy the "regarded as" standards, the District Court need not reach the issue of accommodation.  Were it to do so, the shortcomings in the Plaintiff's theory would bleed into that analysis as well.

In order to support a failure to accommodate claim, the Plaintiff in the first instance must have requested accommodation.  While the request does not have to be in writing

---

[4]  To show substantial limitation in the major life activity of working, "an individual must be unable to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." <u>Marinelli</u>, 216 F.3d at 364 (citation and internal quotations omitted).

[5]  *See id.; see also* discussion *supra* (citing <u>Rinehimer</u> for proposition that "regarded as" theory looks to disability as defined by ADA).

or formally invoke the magic words "reasonable accommodation," it must be clear enough that the "employer can be fairly said to [have] know[n] of both the disability and [the] desire for . . . accommodation." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999) (citation omitted).

In this case, both the employer and the employee understood that Ms. Rotolo suffered injuries restricting her ability to perform certain work.  Neither party, however, perceived the limitations as entitling Ms. Rotolo to special consideration under the disability discrimination statutes.  To the contrary, the Plaintiff repeatedly participated in the competitive employment process and the Defendant treated her as any other applicant.  *Compare* discussion *supra* (noting Plaintiff's interviews for vacant positions) *with, e.g.*, Ex. 6 to Doc. 15 (letter from Hospital to Plaintiff, advising that another candidate was selected; "[t]his was a difficult decision because we had many excellent candidates, including you, for this single position").  The mere fact that Ms. Rotolo later sought to invoke the protections of the ADA does not mean the Hospital fairly can be said to have known of the Plaintiff's earlier purported desire for accommodation.  *See* discussion *supra*.[6]

---

[6] In her opposition papers, the Plaintiff fails to identify any specific requests for accommodation.  The closest evidence in the record is Ms. Rotolo's letter of interest regarding the pre-anesthesia position, stating she "hope[d the Hospital could] take into consideration [her] dilemma[] of not being able to perform staff nursing [duties] at this time and consider [her] for [the] position

In conclusion, the evidence in this case presents a consistent picture. Neither the Plaintiff nor her employer regarded her as being disabled under the ADA or PHRA. The Defendant's Motion for Summary Judgment is well taken, and it should be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this report and recommendation are due by September 29, 2006. Responses to objections are due by October 10, 2006.

September 13, 2006

/s/ Francis X. Caiazza
Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Gregory G. Paul, Esq.
Hayes C. Stover, Esq.

---

[sic]." *See* Ex. K to Doc. 17. Even reading this evidence in a light most favorable to the Plaintiff, it is not clear the Hospital was sufficiently placed on notice, (a) that the Plaintiff was or believed herself to be disabled, and (b) she sought accommodation based on the disability. To conclude so, the court would need to view the Defendant, through its experience and business sophistication, as having greater powers of insight, deduction, and/or awareness than Ms. Rotolo. While such an approach may or may not make sense as a matter of public policy, the undersigned knows of no legal precedent imposing upon employers such heightened duties of awareness or perception.

-8-